We will now move to the fourth case of the day, U.S. v. David Newton. We have Mr. Theis and Ms. Bonamici. Mr. Theis, go ahead. Good morning, Your Honors. Bill Theis. May it please the Court, representing David Newton. When this case was decided by Judge Bucklow, of course, she didn't have the benefit of Gunn, which this Court decided later. Gunn has reframed the analysis in these cases to a large extent, holding that the District Court has discretion in finding eligibility and is not limited to the Guidelines Policy Statement. The District Court's opinion in this case was very brief and it's actually pretty unclear whether or not the District Court considered itself limited by the Guidelines Policy Statement or whether making an independent ruling is later sanctioned by Gunn. Indeed, it's even a little bit unclear as to whether or not the Judge was deciding this, as many courts do, in a two-step process of saying, is the defendant eligible? And then assuming if he or she is eligible, how am I going to exercise my discretion? If we think about this in terms of the eligibility finding, it's pretty clear that the Court was placing great emphasis on the policy statement of the Centers for Disease Control. Factors that are risk factors and factors that might be risk factors. Obviously, Mr. Newton had a number of risk factors, but they were all on the might list. And the District Court thought that that was not good enough. There were certainly cases that had said that, other cases that had said otherwise, but of course they were all decided pre-Gunn when almost everybody was looking at this in terms of what's allowable under the guidelines. The Judge seemed to mark out the distinction between things that are risk factors and things that might be risk factors based on her belief that the CDC had not conclusively determined that the items on the might list really were some kind of a risk. And that's where the District Court went wrong. The CDC's policy statements, whether it's a factor that is a risk or a factor that might be risk, they have never based that on conclusive evidence, either for one or the other. Indeed, one of the videos on their website, which I cited in the brief, talks about various factors like asthma, which is on the might list, and makes no distinction. These are all dangerous things for someone. So if we're looking at this after Gunn as a case where the judge has discretion in terms of finding eligibility, the judge is still bound by the normal limits of a discretionary ruling. The judge cannot rely on inappropriate considerations. The judge cannot rely on factual premises that are clearly erroneous. And in this case, that's what she did. Why is that an unreasonable line for her to draw? I have to say, I don't read in Judge Bucklow's decision adherence to the Sentencing Commission guidance that Gunn tells us was no longer binding. But in dealing with the kinds of uncertainties that every individual and every institution is dealing with now, why is it unreasonable to draw a line between known risk factors and possible risk factors? Because when she considered this problem, she based it on her belief that the CDC had not found that these might factors were conclusively established. And contrasted that with the other factors. Well, in fact, the CDC has never said with regard to either category of factors, the is or the mights, that this is based on conclusive evidence. That's not something that they have relied on. And yes, you're right. Did the judge ever consider the possibility that the combination of risk factors might indicate a different result? I don't know how much she considered it, but I don't think she made a strong statement that combination affected her decision, although I immediately want to draw the court's attention to her statement, which is all mixed in with this discussion of eligibility, that it was her belief that Newton would actually be safer in prison than out of prison. Well, the CDC has said no, that's wrong. People in prison are like people in nursing homes. When she made that remark that he'd be safer in prison than out of prison, did she focus at all on the particular ambience that he would be in out of prison? Unlike many of the cases we see, your client did present a specific plan as to where he would be out of prison. Did the judge ever compare the prison atmosphere to those particular situations? No, no, she did not. This was not someone who had no plans. This was not someone who was going to go to a rave party or go on spring break. So it really was not a true comparison to say he'd be safer in prison. She also asserted that if he did have a second infection, that the second infection would be milder. Did she rely on any evidentiary basis for that, or was there any evidentiary basis presented to her from which she could draw that conclusion? No, there was not. There was some indication that he had been diagnosed with COVID. So this is tantamount to what we sometimes see with ALJs and social security cases. They play doctor. That's essentially what happened. And as we've cited in our brief, there are certainly indications in the literature that even granting the most to the government, we just don't know whether someone is immune from getting it a second time. There are instances where people get it a second time. And also, very importantly, we don't know that if someone gets it a second time, whether it's going to be easy peasy like the first time or even worse. The district judge also alluded to the fact that he had had the disease. And did she remark about his prognosis in terms of recovery from that? I understand there was some evidence that he was still suffering from some of the effects of that disease. No, her opinion is very brief and it doesn't go into that. No, it's three pages. Most of it boil play. Certainly the first half of it is just quoting the statute or quoting general case law. Unless the court has further questions, I'd like to reserve the rest of my time. Thank you, Mr. Tice. Ms. Bonamici, for the government. Thank you, Judge Hamilton. May it please the court, Deborah Bonamici on behalf of the United States. The district court did not abuse its discretion in denying defendants compassionate release motion. The court began its written opinion, which is admittedly brief, by correctly setting forth requirements for relief under the statute. It found, as the government had conceded, that the defendant had satisfied the statute's exhaustion requirement. It then turned to an analysis of whether the defendant had established an extraordinary and compelling reason for consideration of the sentence reduction. The court found that the defendant had failed to do that. The court reasonably relied on the CDC's failure to identify asthma as a medical condition that increases the risk of severe illness from COVID-19. The guidance she focused on, it was reasonable to depend on that, both because the CDC is a recognized expert in the area, and also because the evidence had shown that the defendant's medical records had described defendant's asthma as intermittent, seasonal, well-controlled, and having no effect on his daily activities. And also the medical records demonstrated that his other but related medical condition, that is, the use of immunocompromising drugs, was not daily, and the physicians had specifically noted in the medical records that they had concluded that the defendant was not immunocompromised. The court also reasonably relied on the fact that the defendant had contracted and recovered from COVID-19. Contrary to the defendant's suggestion, although the evidence was developing as to the level of immunity that's provided by a previous infection, and of course it still is, the scientists at the CDC at the time had expressed the expectation and view that persons who contracted and recovered from the virus would be at reduced risk of reinfection. There's nothing unreasonable about the court's reliance on that evidence in determining that the elevated risk that the defendant was proposing was undermined by that fact or reduced by that fact. It was also reasonable for the court to rely on the fact that the substantial outbreak of COVID-19 that had occurred at the facility where the defendant was housed had been quelled, and that at the time of the decision, the numbers of inmates who were experiencing active infections was very low. These facts undermine the defendant's argument that he was at increased risk because they showed that the risk of infection in a place where the infection was not spread widely was reduced, and they also showed that the BOP's efforts, the efforts that the BOP was making while they waited for vaccines to control and limit the spread of the virus had a positive impact at the facility where the defendant was located. Ms. Bonamici, can I ask you some procedural questions here? You may recall a few years ago, we had a hot debate in our court about judges doing their own medical research online. And it's a little hard to see that there's an alternative to that here, given how quickly medical information is changing, both for an individual and in the advice that we're getting from the CDC and other government institutions, for example. We're seeing, I guess, a significant number of these cases on the Court of Appeals, but I don't have any real sense of the volume of them in the district courts. How do we go about managing in the district courts these sorts of medical issues? Well, Your Honor, I think that there have been an extraordinary number of motions before the district court, and in many cases, individual defendants have brought multiple motions. So even the number of defendants who have brought motions doesn't show the clear picture of what's actually going on. My own observation is that the courts have been relying strongly on the CDC's guidance and have been keeping an eye on that guidance, which does change over time as more evidence comes in, and generally have focused on, at the time of their decision, the CDC's current and best information at that time. And that seems very appropriate. There have been some cases where defendants have presented the court with additional medical information, which would not necessarily require the court to go out and do its own research. We don't think that it's inappropriate for a court to consider whatever's put before it by the defendant. But given the CDC's responsibility here and the responsibility it's taking for trying to assimilate and incorporate all the new information as it comes in as best it can, it's not inappropriate for a court to view the CDC as the best source for this information. The government does, and the government does not view that as an inappropriate for a court. The defendants' complaint about this court's use of the term, what was it, definitive, or it's something quite verbal, is it? Anyway, something that meant definitive, I think is really unfair because what the court, I mean, read reasonably, what the court was doing was making a distinction between medical conditions the CDC had identified as increasing the risk and medical conditions that the CDC had determined there was insufficient evidence to support that determination. But they noted that there was enough evidence out there to mention it as a might. In a case like this one where the medical records do not reflect that the defendant has a serious ongoing debilitating case of asthma or the defendant is not taking immunosuppressant drugs to the point where physicians would consider his immune system as being compromised, it would not be, it's plainly not unreasonable for the court to have determined that in this case, the defendant had not satisfied his burden of demonstrating an extraordinary and compelling reason for early release, meaning eligibility to use Mr. Tice's terms. The court also went on to discuss the 3553A factors and focused specifically on the fact that the defendant had not, had served only one third of the sentence. It's not, it wasn't, because the defendant had not shown an extraordinary and compelling reason for release, the government would take the position that could be the end of the inquiry. But the court's focus obviously was on a more holistic view. Ultimately, the court took a holistic view. And although her discussion is brief, it does make the necessary points, and it does explain the court's reasoning, which is all that's required. And here, her opinion definitely demonstrates that she considered the party's arguments and that she made a determination that was not an abuse of discretion. I don't, maybe I'm missing something. I don't, I don't see in that brief opinion, a discussion of 3553A factors. Assuming I'm, assuming. Maybe I'm incorrect. You may, you may find, I'm sorry, Judge, you may find me straying until, to another. We have another case where you may be making that point later this morning. I think, I think that's right, Judge. I'm sorry for that. All right. Thank you. Thank you, Your Honor. Okay. Thank you, Ms. Bonamici. Mr. Tice, rebuttal. I don't have anything further unless Your Honors have a question. All right. Not seeing any. Our thanks to both counsel and Mr. Newton's case is taken under advisement. We'll move on now to the fifth case.